UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOHN R. WILLIAMS, JR.,**

    **Plaintiff,**

v.                                                           Case No.  8:05-cv-2313-T-30MAP

**DEPARTMENT OF VETERAN AFFAIRS,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. #28), Plaintiff's Response in Opposition to the Same (Dkt. #36) and Defendants Reply Memorandum (Dkt. #40).  Upon review and consideration and for the reasons stated below, this Court finds that Defendant's Motion is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff is a Vietnam veteran with one hundred percent (100%) service connected disability.  In July 2002, while residing in Las Vegas, Nevada, the Las Vegas V.A. Medical Center (hereinafter referred to as "VAMC") granted Plaintiff fee basis status[1], and provided him fee basis services from July 2002 through January 31, 2004.  Although the record is unclear, at some point during this period, Plaintiff moved from Las Vegas to Lake Wales, Florida.

---

[1] Under fee basis status, Plaintiff was permitted to receive health care benefits from non-VA providers at the VA's expense.

In January 2004, the Las Vegas VAMC advised Plaintiff that because he was a Florida resident, future fee basis services would have to be arranged through the James A. Haley Veterans Hospital (hereinafter "JAHVH"). According to Plaintiff, on or around February 2004, he was advised that despite having been previously eligible for fee basis service, he would have to re-apply for fee basis treatment at JAHVH. Upon Plaintiff's re-application, JAHVH would then make an independent determination whether he was eligible for fee basis.

Unhappy with this decision, Plaintiff wrote Senator Bill Nelson requesting assistance. Senator Nelson's office thereafter wrote to JAHVH inquiring about Plaintiff's situation. In response to this inquiry, Lynette Roff, JAHVH's then director, explained that while Plaintiff's fee basis authority in Florida would continue, the VA in Las Vegas would absorb the costs of Plaintiff's care until such time as Plaintiff had an opportunity to be evaluated at the Tampa facility for continuation of care. Roff's letter also indicated the VA was attempting to schedule an evaluation of Plaintiff with one of their psychiatrists, but Plaintiff refused to be evaluated and instead advised he would provide the VA with a report from his private psychiatrist. On March 25, 2004, Plaintiff provided to Jorge Creus, Chief of JAHVH's Fee Services Section, a letter from his treating psychiatrist in Las Vegas as well as an evaluation by the Las Vegas VAMC's Chief of Psychiatry.

On April 24, 2004, Creus wrote to Plaintiff advising that based on a review of Plaintiff's medical records, his application for fee basis treatment was denied, and that the

requested medical care could not be provided at JAHVH. On May 5, 2004, Plaintiff filed a formal appeal, seeking review of the agency's determination.

On May 13, 2004, Roff wrote to Plaintiff authorizing fee basis treatment for all medical conditions. Roff sent a second letter to Plaintiff on May 20, 2004, wherein she explained his fee basis authorization was retroactive to February 1, 2004, the date immediately following the expiration of Plaintiff's Las Vegas VAMC's fee basis authorization. She further indicated that invoices for medical services provided on or after February 1, 2004, should be sent to JAHVH for payment, and informed Plaintiff the VA would reimburse him for medications previously purchased.

On May 26, 2004, Creus wrote to Plaintiff advising that JAHVH had authorized fee basis treatment for any medical condition for a one-year period or until Plaintiff was re-evaluated. Creus further informed Plaintiff that in order for the VA to determine whether a doctor was authorized to treat Plaintiff, Plaintiff needed to quickly select a treating physician and provide the physician's name and other pertinent information to the VA. Creus also advised Plaintiff not to begin treatment with his treating physician until he received confirmation that the physician was approved.

On June 21, 2004, Plaintiff filed an administrative claim under the Federal Tort Claims Act (hereinafter "FTCA") alleging, among other things, medical malpractice and negligence. Plaintiff sought one million dollars in damages. On August 30, 2004, the VA, through the Office of Regional Counsel (hereinafter "ORC") denied Plaintiff's claim. Plaintiff withdrew his claim on September 1, 2004.

During these events and in the year following, Plaintiff submitted approximately thirty (30) requests for records under the Freedom of Information Act and the Privacy Act to various officials at ORC, the VA's Office of General Counsel (hereinafter "OGC"), and JAHVH. It is upon these requests that Plaintiff's Complaint was filed.

**Plaintiff's Request for Records**

*Requests to the ORC*

* On June 1, 2004, Plaintiff wrote to Kathy Wallace, an ORC paralegal, requesting an explanation as to why a three year old letter was being circulated that, according to Plaintiff, could have resulted in his C-file being wrongfully sent to Reno, Nevada. The letter attached a series of August, 2001 e-mails bearing a March 16, 2004, date stamp from the Reno Veterans Affairs Regional Office, concerning the transfer of Plaintiff's claim file. Gary Slemmens, Assistant Regional Counsel, responded to Plaintiff's letter advising him that the ORC did not condone attempts to tamper or otherwise inappropriately affect the contents of any C-file.

* On June 8, 2004, Plaintiff forwarded a letter to Slemmens requesting records concerning himself. In response, the ORC assigned the request to an attorney team most associated with the subject matter of the request. The team conducted an electronic and manual search of its files for all responsive records. ORC's search identified four pages of records responsive to Plaintiff's request and released these records to Plaintiff on June 15, 2004. Additionally, the ORC informed Plaintiff of his right to appeal to the VA's office of general counsel. Plaintiff did not appeal this decision.

* On September 1, 2004, Plaintiff forwarded a letter to Slemmens requesting records concerning the investigation of an administrative claim filed by Plaintiff under the FTCA. Slemmens responded to Plaintiff on September 14, 2004, informing Plaintiff the requested records were exempt from disclosure pursuant to FOIA exemption (b)(5) as the records were prepared in anticipation of litigation.[2] Slemmens' letter also advised Plaintiff of his

---

[2] The responsive records comprised a 72-page matter file on Plaintiff's FTCA claim, and included copies of correspondence between ORC and Plaintiff, and between ORC and other VA components, and a
(continued...)

>appeal rights. Subsequent to Slemmens' letter of September 14, 2004, ORC reviewed the withheld records and determined that the correspondence between ORC and Plaintiff are responsive to Plaintiff's September 1, 2004, request and are segregatable from records protected by FOIA's disclosure exemptions. As such, on January 30, 2007, ORC released to Plaintiff the non-exempt records from his FTCA matter file.

\*    On January 18, 2005, Plaintiff forwarded a letter to K. Sue Meyer[3] requesting records showing the authority for anyone other than Meyer to act as Regional Counsel. Meyer responded to Plaintiff on January 26, 2005, providing excerpts from the VA's General Counsel Handbook, wherein it explained the authority of a Regional Counsel to delegate authority to a staff member and the circumstances under which an Assistant Regional Counsel may act as Regional Counsel. The responsive records totaled three pages. The letter also advised Plaintiff of his appeal rights.

>Plaintiff appealed this determination. However, the appeal was denied on June 9, 2005, on the grounds that ORC's efforts to locate responsive records satisfied FOIA's reasonable search requirements.

\*    On January 31, 2005, Plaintiff alleges he wrote to ORC attorney James Kelly requesting all records concerning Plaintiff's FTCA claim. ORC, however, has no record of this request. According to Defendant, this request duplicates Plaintiff's September 1, 2004 request. All responsive non-exempt records were released to Plaintiff in response to this September 1 request.

\*    Plaintiff also alleges that on January 31, 2005 he wrote to Meyer requesting ORC's matter file on his FTCA claim as well as records relating to Slemmens' authority to deny the claim. Defendant has no record of this request. Notwithstanding, the records which are non-exempt were previously produced.

\*    On February 1, 2005, Plaintiff forwarded a letter to Wallace requesting records regarding communications about Plaintiff and his C-file exchanged between

---

[2](...continued)
legal memorandum prepared by an ORC attorney.

[3] Meyer is Regional Counsel for the VA's Region Six which encompasses Florida, Puerto Rico, and the U. S. Virgin Islands.

       ORC and the Bay Pines Regional VA office. Meyer responded on February 10, 2005, and released to Plaintiff eight pages of responsive records.

       Plaintiff appealed this determination. However, the appeal was denied on May 25, 2005, on the grounds that ORC had conducted a reasonable search and had released unredacted copies of all responsive records.

\*       On February 8, 2005, Plaintiff forwarded a letter to Slemmens wherein he requested records concerning communications exchanged between Slemmens, his paralegal and his office regarding Plaintiff. Slemmens responded on February 23, 2005, informing Plaintiff that all responsive records had been previously released and further informing Plaintiff of his appeal rights. Plaintiff did not appeal this determination.

\*       Plaintiff claims that on February 14, 2005 he wrote to Meyer requesting records showing the authority of anyone other than Meyer to act as Regional Counsel. ORC has no record of this request. Notwithstanding, all responsive records, according to Defendant, were previously released.

\*       On April 28, 2005, Plaintiff forwarded a letter to Wallace requesting records of all communications concerning himself. Meyer responded on June 10, 2005. She informed Plaintiff that no responsive records existed beyond those previously released, and informed Plaintiff of his appeal rights. Plaintiff has not appealed this determination.

\*       On January 2, 2005, Plaintiff forwarded a letter to Slemmens requesting a copy of the ORC investigation file on his FTCA claim. Meyer responded on June 13, 2005, informing Plaintiff the file was exempt from release as attorney work product, and advised Plaintiff of his appeal rights. Plaintiff did not file an appeal.

\*       In a letter dated June 17, 2005, Plaintiff requested from Slemmens records relating to his authority to serve as Acting Regional Counsel. Meyer responded on June 30, 2005, informing Plaintiff again that all responsive records had been previously released.

\*       On August 19, 2005, Plaintiff sent a letter to Meyer, Forest Farley, Jr., JAHVH's previous director, and Keith Ziegler, Patient Advocate at JAHVH, wherein he enclosed copies of previous FOIA requests and requested that his complaints of alleged VA misconduct be forwarded to the VA's Office of Inspector General (hereinafter referred to as "OIG"). Meyer responded on

September 1, 2005, informing Plaintiff that all responsive records had been previously released and provided him the procedures on filing the complaint with the OIG. Meyer additionally informed Plaintiff of his appeal rights. Plaintiff has not appealed this determination.

\* On August 24, 2005, Plaintiff requested from Meyer records relating to a complaint against a Dr. Sherod Williams. Meyer responded on September 7, 2005, informing Plaintiff that no responsive record existed and further informed him of his appeal rights. Plaintiff has not appealed this determination.

\* On October 21, 2005, Plaintiff forwarded a letter to Meyer, Farley, Vicki Bowman, JAHVH's Privacy Officer, and John Jack Thompson of OTC requesting records concerning communications from OTC about his FOIA requests. Meyer responded on November 3, 2005, informing Plaintiff that no responsive records existed. She further informed Plaintiff of his appeal rights. Plaintiff has not appealed this determination.

*Request to OGC*

\* On February 9, 2005, Plaintiff forwarded a letter to the OGC requesting records concerning Slemmens' authority to act as Acting Regional Counsel and records regarding communications exchanged between ORC and OGC about Plaintiff. According to OGC, they have no record of this request.[4] Notwithstanding, a search for responsive records was done on January 25, 2007, and all responsive records were released to Plaintiff, specifically, the relevant excerpts from the General Counsel's Handbook. Plaintiff was also informed of his appeal rights. Plaintiff did not appeal this determination.

*Request to JAHVH*

\* On June 1, 2004, Plaintiff forwarded a letter to Roff, wherein he requested records concerning himself. In response to this request, JAHVH's FOIA/Privacy Act unit searched three possible sources for responsive records: JAHVH's medical record files, its administrative record files, and electronic mailboxes of JAHVH officials. Following this search, on July 13, 2004, the FOIA/PA unit released to Plaintiff responsive records. These documents included e-mails, Plaintiff's medical records, and his administrative record.

---

[4]Apparently, Plaintiff faxed the request to an incorrect number.

>   The response also informed Plaintiff of his appeal rights. Plaintiff has not appealed this decision.
>
> \*   On June 7, 2004, Plaintiff forwarded a letter, wherein he requested records of "all communications in any form of existence with other VA Regional Offices, and/or Central Offices . . . in the possession of knowledge of, control of, former possession of, and/or former control of" Roff, Creus and Sue Sosa Vega regarding himself. The FOIA/PA unit has no record of this request. Notwithstanding, upon a search being conducted, it was determined that all records responsive to the request were released on July 13, 2004.
>
> \*   On June 25, 2004, Plaintiff forwarded a letter to Roth, Creus and McDuffie requesting an "accuracy correction" of alleged false statements made concerning his attempts to obtain medical treatment. Bowman responded to Plaintiff on July 27, 2004, stating that no false statements had been made and that no record of false statements existed. The letter also informed Plaintiff of his right to appeal the determination. Plaintiff has not appealed this determination.
>
> \*   On August 5, 2004, Plaintiff forwarded a letter to Bowman requesting records concerning himself in Creus' possession. Plaintiff also requested an "accuracy correction" to reflect that he never submitted an application for fee basis treatment. Bowman responded to Plaintiff on August 16, 2004, wherein she indicated no responsive records existed beyond those previously provided on July 13, 2004. Bowman also informed Plaintiff of his appeal rights. Plaintiff has not appealed this determination.
>
> \*   On February 4, 2005, Plaintiff forwarded a letter to Roff requesting records relating to communications with Senator Bill Nelson's office regarding Plaintiff. While the FOIA/PA unit has no record of this request, it duplicates Plaintiff's previous June 25, 2004, request. Notwithstanding, another review of records was conducted and no responsive records were found.
>
> \*   On April 25, 2005, Plaintiff forwarded a letter to Creus requesting records relating to approval of fee basis treatment. Bowman responded to Plaintiff on June 25, 2005, providing all responsive records. Bowman also informed Plaintiff of his appeal rights. Plaintiff has not appealed this determination.
>
> \*   On April 28, 2005, Plaintiff forwarded a letter to Creus requesting records regarding his fee basis treatment status. In response, Farley, JAHVH's then director, responded to Plaintiff on August 15th and October 20, 2005, stating

the responsive records would be forthcoming should the same exist. Mr. Farley subsequently determined that no responsive records existed beyond those previously released.

* On May 12, 2005, Plaintiff forwarded a letter to Dr. Andrea Muhar requesting records relating to his fee basis treatment status. FOIA/PA has no record of this request. While Dr. Muhar is no longer employed having resigned in February, 2006, a search review for the records was conducted and it was determined that any responsive records Dr. Muhar had were released as part of Plaintiff's medical records on July 13, 2004.

* On August 19, 2005, Plaintiff forwarded a letter to Farley requesting records relating to all communications about himself between Farley and other VA officials. While FOIA/PA has no record of this request, Bowman has checked with the director's office and has determined that no responsive records exist beyond those previously released.

* On August 23, 2005, Plaintiff submitted three FOIA requests to JAHVH. The first request, which was to McDuffie, sought records of communications between McDuffie and other VA officials and information from McDuffie's personnel file. The FOIA/PA unit has no record of this request. However, a search was conducted for responsive records and it was determined that no non-exempt documents existed.

    The second request, which was to Farley, sought records concerning Plaintiff's complaint against McDuffie for allegedly making false statements about Plaintiff. While the FOIA/PA unit has no record of receiving this request, a search was done and it was determined that no responsive records existed.

    The third request, which was also to Farley, sought records identifying JAHVH's medical staff who were involved in Plaintiff's fee basis treatment. The FOIA/PA unit has no record of this request. However, a search was conducted, and it was determined that no responsive records existed beyond those previously released.

## **DISCUSSION**

*Freedom of Information Act ("FOIA")*

The FOIA requires government agencies to disclose documents requested by members of the public. See 5 U.S.C. § §552(a)(3)(a). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Hawkins v. U.S. Department of Labor, 2005 WL 20073811 at 1 (M.D. FL 2005) (citing National Labor Relations Board v. Robbins Tire and Rubber Company, 437 U.S. 214, 242 (1978)). Because the determination of whether an exemption applies is a matter of law, FOIA cases generally are handled on motions for summary judgment once the documents in issue are properly identified. Summary judgment is available to an agency when the agency "demonstrates that it has fully discharged its obligations under FOIA." Wilbur v. Central Intelligence Agency, 273 F.Supp. 2d 119, 124 (D.D.C. 2003). Specifically, the agency must show that each document requested has either been produced, is unidentifiable or is exempt from the FOIA's disclosure requirements. See id. "Summary judgment is appropriate when the agency submits a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . .were searched.' " Wilbur, 273 F. Supp. 2d at 124.

When a plaintiff challenges the adequacy of an agency's search, the agency must establish that it conducted a search reasonably calculated to uncover all responsive records. See Truett v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990). This search does not

have to be an exhaustive search; rather, the agency must only search those sources it believes may likely contain responsive records. The agency ultimately bears the burden of showing that it made a good faith effort to conduct a search for the requested records and used methods which could reasonably be expected to produce the information requested. See Oglesby v, Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency, however, may withhold documents if the documents or portions thereof fall within one of the nine statutory exemptions to the FOIA disclosure requirements. Those records which are exempt form disclosure include those matters:

> (1) specifically authorized under an Executive Order to be kept secret . . .;
> (2) related solely to the internal personnel rules and practices of an agency;
> (3) specifically exempted from disclosure by statute . . .;
> (4) trade secrets and commercial or financial information obtained from a person and privileged and confidential;
> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation;
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
> (7) records or information compiled for law enforcement purposes [under certain circumstances];
> (8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or
> (9) geological and geophysical information and data.

See 5 U.S.C. § §552(b)(1) -(9). These disclosure provisions, however, are read broadly. See Hawkins, 2005 WL 20073811 at 1. "The government has the burden of establishing that a certain document is exempt from disclosure and it may not rely upon 'conclusory and generalized allegations of exemption in meeting its burden'" Holland v. United States Dept.

of Justice, Federal Bureau of Investigation, 1986 WL 3122 at 1 (E.D. Pa. 1986). Moreover, if a district court finds that an exemption does not apply, "[it] may order the agency to produce any improperly withheld document." Hawkins, 2005 WL 20073811 at 2.

Defendant alleges Plaintiff has failed to exhaust his administrative remedies as he appealed only three of his numerous FOIA requests. Under the FOIA, a party is required to exhaust all administrative remedies before seeking redress in the federal courts. See Dorn v. Commissioner of IRS, 2005 W.L. 1126653 at 3 (M.D. FL 2005). The requirement of exhaustion of administrative remedies prior to seeking redress in federal court, allows an agency to correct possible mistakes and alleviate the need for judicial review of the same. See Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). Moreover, the exhaustion requirement "is a condition precedent to filing suit." Id. at 1368. Plaintiff's failure to administratively appeal the VA's decision on all but three of his requests precludes Plaintiff from obtaining any relief on all but three of his FOIA requests. Defendant, however, is still entitled to summary judgment as to Plaintiff's remaining FOIA requests.

In reviewing the record, it appears the VA has met its burden. The affidavits filed in support of Defendant's Motion for Summary judgment adequately establish that an adequate search for all of the records requested by Plaintiff was conducted. Plaintiff has produced no evidence to the contrary. To the extent Defendant refused to provide the requested documents to Plaintiff, the denial was based on properly applied exemptions, specifically exemption 5 and exemption 6 of the FOIA. See 5 U.S.C. § § §552(b)(5)-(6).

Exemption 5 protects "inter-agency or intra-agency memoranda or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § § §552(b)(5). According to Meyer's affidavit, Defendant applied exemption 5 to withhold as attorney work product e-mails exchanged between ORC attorneys, specifically those e-mails discussing Plaintiff's FTCA claim. Additionally, legal memorandum and exhibits prepared by Defendant's attorneys handling Plaintiff's claim were withheld as well as attorney client communications correspondence from the ORC to JAHVH. To ensure the agency's response to Plaintiff's request was adequate, Meyer conducted an additional review of the file and to the extent documents were segregatable from those documents which were privileged, those documents were produced to Plaintiff. In reviewing the specific requests, it is clear to this Court exemption 5 was properly applied.

Exemption 6 protects personnel and medical files and similar files where the disclosure of the same "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § § §552(b)(6). As stated above, Plaintiff sought the personnel file of a VA employee, McDuffie. In determining whether exemption 6 is applicable, an agency must first determine whether a protectable privacy interest exists and then balance the public interest in disclosure against the privacy interests in non-disclosure. See Ripskis v. H.U.D., 746 F.2d 1, 3 (D.C. Cir. 1984). It cannot be said that the public's interest in McDuffie's personnel file outweighs McDuffie's privacy interests with regard to the information contained in his personnel file, particularly when the information sought is related to a personal complaint of Plaintiff about McDuffie, i.e. McDuffie's request for police protection during future visits

from Plaintiff. However, even if McDuffie's conduct was improper, disclosure of his personnel file would not bring to light any alleged misconduct on the part of the VA. At no time did Plaintiff request information in McDuffie's personnel file which may have contained issues affecting the public at large. Accordingly, Defendant has appropriately applied the FOIA exemptions and summary judgment as to Plaintiff's FOIA claim is appropriate.

*Privacy Act*

Summary judgment under the Privacy Act is subject to the summary judgment standard under Federal Rule of Civil Procedure 56(c) and is appropriate when there is no "genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." Cohen v. United American Bank of Central Florida, 83 F.3d 1347, 1349 (11th Cir. 1996). In reviewing the record, this Court finds summary judgment as to Plaintiff's Privacy Act claims is proper.

The Privacy Act permits civil remedies when an agency (1) upon being requested, refuses to amend an individual's records; (2) refuses an individual access to their own records; (3) fails to maintain accurate records; and (4) fails to comply with any other provisions of the Act, such that it has an adverse effect on the individual. See 5 U.S.C. § §§552a(g)(1)(A)-(D). Plaintiff is seeking relief under each of these provisions.

Plaintiff first alleges Defendant violated §552a(g)(1)(A) by refusing to amend his records and make "accuracy corrections." However, in order to seek relief under this

provision, a plaintiff must exhaust their administrative remedies. Plaintiff, however, failed to exhaust his administrative remedies in that he never filed an appeal. He is thereby precluded from pursuing claims under §552a(g)(1)(A).

Plaintiff next asserts he is entitled to relief under §552a(g)(1)(B), as Defendant has refused Plaintiff access to records. Similar to §552a(g)(1)(A), Plaintiff must first exhaust his administrative remedies by appealing the VA's decision. He has not done so. Notwithstanding, Plaintiff was provided every record requested which was not exempt and which Defendant was able to locate. Plaintiff has failed to provide any evidence to the contrary.

Plaintiff also asserts Defendant violated §552a(g)(1)(c) by failing to maintain accurate records. In order to establish a claim under §552a(g)(1)(c), a plaintiff must show that an agency intentionally or willfully failed to maintain a record "with the degree of accuracy, relevance, and timeliness necessary to assure fairness" in determining a benefit, and that such failure resulted in an adverse determination. Rosen v. Walters, 719 F.2d 1422, 1423-24 (9th Cir. 1983). The statute does not require perfect records, only that the agency maintain records with *reasonable* accuracy. See Edison v. Department of Army, 672 F.2d 840, 843 (11th Cir. 1982). Plaintiff has failed to provide any evidence that the VA intentionally or willfully failed to maintain records of any benefit determinations and that such a failure resulted in an adverse determination. While Plaintiff's fee basis treatment was initially denied upon his transfer to JAHVH, after appealing this agency's determination, the VA authorized Plaintiff's fee basis treatment and applied it retroactively to the date immediately

following the expiration of the Las Vegas VAMC's fee basis authorization. Any confusion surrounding Plaintiff's fee basis status upon his transfer to JAHVH may amount to negligence on the part of the VA, but falls short of the intentional or willful standard required under the Privacy Act. Plaintiff has failed to produce any evidence establishing any intentional or willful conduct on the part of Defendant. Absent such evidence, summary judgment as to Plaintiff's Privacy Act claim is GRANTED.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. #28) is GRANTED.

2. Summary judgment is entered in favor of Defendant and against the Plaintiff.

3. The Clerk is directed to terminate any pending motions and CLOSE this file.

**DONE** and **ORDERED** in Tampa, Florida on May 4, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-2313 Motion for Summary Judgment -FOIA.frm